**A/S ATLANTICA et al., as owners of the M/V HOEGH TRAVELLER, Plaintiffs,**

v.

**MORAN TOWING & TRANSPORTATION CO., INC., TUG ALICE M. MORAN, INC., and the TUG CLAIRE A. MORAN, in rem, Defendants.**

**No. 68 Civ. 2511.**

United States District Court, S. D. New York.

July 18, 1973.

---

Haight, Gardner, Poor & Havens, New York City, for plaintiffs; MacDonald Deming, and John J. Reilly, New York City, of counsel.

Burlingham, Underwood & Lord, New York City, for defendants; Kenneth H Volk, New York City, of counsel.

## OPINION

STEWART, District Judge:

Plaintiffs are Norwegian corporations and owners of the Norwegian Motor vessel Hoegh Traveller. They brought suit against defendant Moran Towing & Transportation Co., Inc. [hereinafter Moran] and the tug Claire A. Moran *in rem* to recover damages suffered by their vessel when being assisted by the tug Claire A. Moran in undocking at Port Newark. Jurisdiction is based on the admiralty or maritime jurisdiction of the district courts.

28 U.S.C. § 1333. The following facts were adduced at trial.

On the morning of February 2, 1966 the Hoegh Traveller completed loading a cargo of scrap metal at Berth 27, Port Newark. She was bound with her cargo for Japan and needed assistance to undock and proceed to sea. The plaintiff's local agent requested Moran to furnish this assistance and Moran dispatched its tug, the Claire A. Moran, which was already at Port Newark having completed another job in that vicinity.

The evidence shows that defendant Moran was negligent in failing to provide two tugs of adequate power to assist the Hoegh Traveller undock and in formulating and attempting to carry out an imprudent plan by which the Hoegh Traveller was to undock and proceed to sea. The evidence further shows that as a result of Moran's negligence the vessel, Hoegh Traveller, struck the bank of the Branch Channel. The Traveller allegedly suffered damage to its steering engines and machinery; however, the trial concerned only the merits and no evidence was introduced as to damages.

The pilot of the tug Claire A. Moran testified that his preconceived plan was to back the Traveller away from the dock with the tug at her port bow and turn her around when she had backed far enough so that her bow was seaward

of the outer end of the pier. She would then proceed to the main channel. The length of the Traveller was shown to be 544 feet at water level, allowing 53 feet maneuvering room in the 600 foot wide Branch Channel.

There is substantial evidence that it would have been reasonable for the pilot to have taken the vessel backwards to the main channel and turn her around at that juncture. The testimony of a licensed master and maritime consultant indicates that it would not be possible to turn a 585 foot ship (547 ft. at water level) in a 600 foot wide channel with safety. It seems to us a matter of logic that such a maneuver could not be attempted with any reasonable assurance of safety and Captain Fertig's testimony confirms our feeling in this regard. The fact that defendant's pilot had successfully turned numerous ships in the Branch Channel with a single tug does not persuade us that it is a safe or prudent maneuver, but only that Captain Neilson has been lucky in the past.

We are convinced likewise that Moran was negligent in not assigning two tugs of adequate power to assist the Traveller in her undocking. Testimony by Moran's own senior dispatcher is revealing in this regard.

While there was some conflict as to whether the Hoegh Traveller actually struck the bank, the weight of the evidence is that the rear end of the ship likely hit the bank. The Engine log records that "a bang was heard from the shell plating . . ." Defendant's contention that the cause of the casualty might just as easily be attributed to a "latent defect" is not persuasive.

Defendant contends that the Pilotage clause in the towage contract relieves Moran of liability even though Moran was negligent. The pilotage clause provides:

"When any licensed pilot or a captain of any tug furnished to or engaged in the service of assisting a vessel making use of or having available her own propelling power, goes on board such vessel, it is understood and agreed that he becomes the borrowed servant of the vessel assisted and her owner or operator for all purposes and in every respect, his services while so on board being the work of the vessel assisted and not of the tugboat company and being subject to the exclusive provision and control of the ship's personnel."

As plaintiff correctly contends, such clauses have been narrowly construed against towing companies, *e.g.*, Pennsylvania R.R. Co. v. The Beatrice, 161 F.Supp. 136, 149 (S.D.N.Y.), aff'd, 275 F.2d 209 (2d Cir. 1960), and cannot be used as a defense where as here a negligent plan is put into operation and the pilot boards and navigates the vessel pursuant to the preconceived plan. *See* American South African Line, Inc. v. Sheridan Co., Inc., 1936 A.M.C. 287 (E. D.Pa.1935) (not officially reported, attached to Appendix of plaintiff's trial memorandum). Captain Neilson's testimony that he had turned many boats in this way only confirms our judgment that this plan of navigation was a preconceived one. *See also* Transpacific Carriers Corp. v. Tug Ellen F. McAllister, 336 F.2d 371 (2d Cir. 1964).

We conclude that pilot Neilson's preconceived plan of turning the vessel in the Branch Channel and in not supplying tugs of adequate power was negligent and in breach of Moran's warranty of workmanlike service; that the pilotage clause in Moran's towing contract is not applicable as a defense to this action; and that plaintiffs are entitled to recover their damages from Moran *in personam* and from the tug Claire A. Moran *in rem*, jointly and severally.

So ordered.